UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYMOND CRAIG JOHNSON, : | |
|     Petitioner        : | CIVIL ACTION NO. 3:22-0640 |
| v.                    : | (JUDGE MANNION) |
| WARDEN J.L. JAMISON, : | |
|     Respondent    : | |

### MEMORANDUM

Raymond Craig Johnson, an inmate confined in the Allenwood Federal Correctional Institution, White Deer, Pennsylvania, filed the above captioned petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2241. (Doc. 1, petition). He challenges a disciplinary action against him, in which he was found guilty of fighting and sanctioned to twenty-seven (27) days loss of good conduct time. Id. Specifically, Petitioner claims that the investigating officer failed to advise him of his rights; he engaged in self-defense, the DHO should have found him mentally incompetent, and the DHO was biased. Id.

For relief, Petitioner requests the incident report be expunged and his good conduct time be restored. Id. The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I. Background

On August 10, 2021, at approximately 6:36 a.m., Officer T. Strickland, delivered Incident Report No. 3534099 to Johnson, charging him with fighting with another person, in violation of Code 201 and refusing to obey an order, in violation of Code 307. (Doc. 8-1 at 8, Incident Report). The incident report reads as follows:

> Inmate Johnson, Raymond #30880-057 was observed fighting with inmate []. Both inmates were observed striking each other with a closed fist about the head and upper torso area. I gave both a directive to stop striking each other and both inmates refuse to stop striking each other. I then deployed a 2 second burst of OC from my MK-4. I gave another directive to stop fighting and they again refuse to stop fighting. I then deployed another 2 second burst of OC from my MK-4. After the 2nd burst of OC both inmates complied and stop fighting.

Id.

On August 12, 2021, Petitioner appeared before the Unit Discipline Committee ("UDC"). (See Doc. 8-1 at 9, Committee Action). Due to the seriousness of the offense, the UDC referred the charge to the Discipline Hearing Officer ("DHO"). Id. During the UDC hearing, staff member, R. Robertson informed Johnson of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Id. at 11, Inmate Rights at Discipline Hearing). Petitioner was also provided with an

opportunity to request witnesses and to have a staff representative. (Id. at 12). Petitioner's attitude was noted as fair, and Petitioner declined to provide a statement. (Id. at 10).

On August 17, 2021, Johnson appeared for a hearing before DHO, Nevils. (Doc. 8-1 at 13-16). He waived his right to have a staff representative,[1] and witnesses. Id. Johnson admitted to fighting before the DHO." Id.

In addition to the Incident Report and Investigation, the DHO considered the following documentary evidence: Medical Assessments, memos, photos and CCTV footage. Id. Based on the weight of the evidence, the DHO found that Petitioner committed the prohibited act of fighting with another person, a Code 201 violation. Id. The DHO sanctioned Johnson on the Code 201 violation to twenty-seven (27) days loss of Good Conduct Time; thirty (30) days disciplinary segregation; and 120 days loss of phone privileges. Id. The DHO documented that due to the severity of the offense,

---

[1] Although the DHO references in his report that "[y]ou did request a staff representative but no witnesses to assist you in preparing for this hearing," the actual DHO Report reflects an "X" after the statement "[i]nmate waived right to staff representative." This inconsistency is indicated as a typographical error by DHO Nevils in his declaration. (Doc. 8-1 at 3, Declaration of Charles Nevils). Thus, the DHO Report comports with Respondent's wish to not have a staff representative, as indicated in his Notice of Discipline Hearing Before the DHO. (See Doc. 8-1 at 12).

and to deter this activity in the future, loss of good conduct time and disciplinary segregation were warranted. Id. He imposed the loss of phone privileges due to Petitioner's poor institution adjustment and behavior, finding that this privilege is meant for those inmates who follow rules and regulations and do not present a management problem for staff or pose a threat to the security of the institution, self, or others. Id. Finally, the DHO determined that all sanctions imposed were to correct the present inappropriate behavior and deter future behavior of this type.[2] Id.

Johnson was advised of his appeal rights at the conclusion of the hearing. Id.

---

[2] The Court notes that in Section V, Specific Evidence Relied on to Support Findings, the DHO states that Petitioner appeared before the DHO and admitted to fighting, and that the DHO's review of the CCTV footage clearly showed Petitioner involved in a physical altercation with another inmate. (Doc. 8-1 at 15). However, in the first paragraph of Section VII, Reason for Sanction or Action take, the DHO speaks to "action/behavior on the part of any inmate to possess, manufacture, or introduce a hazardous tool" and the "possession of a weapon/sharpened instrument and possession of anything not authorized will not be tolerated." Id. The Court finds this paragraph incongruent to the evidence before the DHO, which demonstrated only a physical altercation between inmates and not the possession of a weapon. Although the DHO issued a statement correcting the issue with him mistakenly stating that Petitioner requested staff representation, the DHO, for unknown reasons, failed to correct this obvious error. The court would suggest that a more careful preparation of these repots would be appropriate. The Court concludes, however, that the DHO report, together with the record evidence, supports the DHO's finding that Petitioner committed the prohibited act of fighting with another person, a code 201 violation.

On May 2, 2022, Petitioner filed the instant action, challenging the DHO's determination. (Doc. 1).

## II. Discussion

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with

- 5 -

institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. §541.1, et seq. Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. §541.5(a). The incident report ordinarily must be issued within 24 hours of the time the staff member became aware of the prisoner's involvement in the incident. Id. The incident is then investigated. Id. at §541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed

the prohibited act charged and/or a similar prohibited act as reflected in the incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. Id. at §541.7(a). Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. Id. at §541.3(a). If a prisoner is charged with a prohibited act in the Greatest or High category, the UDC automatically refers the incident report to the DHO for further review. Id. at §541.7(a)(4).

Under the regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at 28 C.F.R. §541.8. The prisoner is entitled to notice of the charges at least 24 hours before the hearing. Id. at §541.8(c). The prisoner is entitled to appear at the hearing and is entitled to staff representation at the hearing. Id. at §541.8(d) & (e). The prisoner is entitled to make a statement and to present documentary evidence. Id. at §541.8(f). A prisoner may request to have witnesses appear at the hearing on his behalf, but the DHO may refuse to call requested witnesses if they are not reasonably available, if their presence would jeopardize institutional security, or if they would present repetitive evidence. Id. The DHO considers all evidence presented at the hearing. Id. The decision of the DHO must be based on at least some facts

and, if there is conflicting evidence, the decision must be based on the greater weight of the evidence. Id. Following the hearing, the DHO must provide a written report documenting that the prisoner was advised of his rights. Id. at §541.8(h). The report must document the evidence relied upon by the DHO, the findings of the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. Id.

In the instant case it is clear from the record that Johnson was afforded all the required procedural rights set forth in Wolff. He received written notice of the disciplinary charges at least twenty-four hours prior to the hearing; he appeared at the hearing and made a statement, in which he admitted to fighting. He was also given the right to a staff representative, an opportunity to present witnesses and provide documentary evidence (though he chose not to do so); and he was given a written statement explaining the DHO's decision. See Wolff, 418 U.S. at 564–66.

To the extent that Petitioner suggests further that his due process rights were violated because the DHO was biased, when he "used negative and inaccurate information against [him] as part of the greater weight to draw adverse inference against [him], (Doc. 1 at 5), while Petitioner is correct that he was entitled to an impartial hearing officer, see Wolff, 418 U.S. at 571, his conclusory allegation of bias cannot stand. In the context of a prison

disciplinary proceeding, the requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body." See Meyers v. Aldredge, 492 F.2d 296, 306 (3d Cir. 1974). Petitioner simply has not demonstrated that the DHO was "personally or substantially involved the circumstances underlying [the investigation of the] charge" such that the DHO should not have presided over his hearing. See Greer v. Hogston, 288 F. App'x 797, 799 (3d Cir. 2008). Petitioner's "generalized critique" of the DHO is insufficient to demonstrate the degree of bias necessary to sustain a due process violation. See Lasko v. Holt, 334 F. App'x 474, 476 (3d Cir. 2009).

Finally, as to Petitioner's claim that DHO Nevins failed to take his mental health history into account and find him mentally incompetent, DHO Nevins submits Petitioner's inmate profile which demonstrates that he is a Mental Health care level one inmate. (Doc. 8-1 at 17). Care level one inmates require no significant mental treatment per BOP Program Statement 5310.16, *Treatment and Care of Inmates with Mental Illness.* (Doc. 8-1 at 4). Thus, Petitioner fails to demonstrate a due process violation.

Accordingly, a review of the record reveals that, in arriving at a finding of guilt, the DHO relied on the incident report and investigation, viewed CCTV

footage clearly depicting Petitioner involved in a physical altercation with another inmate and considered the inmates' medical assessments, memos, photos and Plaintiff's statement admitting to fighting. The DHO's decision clearly meets the due process requirement of being supported by "some evidence in the record" under Hill. See Sinde v. Gerlinski, 252 F.Supp.2d 144, 150 (M.D. Pa. 2003) ("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff") (quoting Hill, 472 U.S. at 457).

The Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. §541.3. Petitioner was found guilty of a 200-level, high severity level prohibited act. Pursuant to 28 C.F.R. §541.3, the following are the sanctions available for 200-level offenses:

> A. Recommend parole date rescission or retardation.
> B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50%, or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
> B.1. Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
> C. Disciplinary segregation (up to 6 months)
> D. Make monetary restitution.
> E. Monetary fine.
> F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
> G. Change housing (quarters).

H. Remove from program and/or group activity.
I. Loss of job.
J. Impound inmate's personal property.
K. Confiscate contraband.
L. Restrict to quarters.
M. Extra duty.

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied.

## III. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus will be **DENIED**. A separate Order will be issued.

*s/ Malachy E. Mannion*
MALACHY E. MANNION
United States District Judge

DATED: November 7, 2023
22-0640-01